UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUDRA ELY,

      Plaintiff,

                                                              Case No. 12-13376
                                                              HON. GERSHWIN A. DRAIN

v.

UPTOWN GRILLE, LLC,
a Michigan limited company, and
RYAN ADAMS, an individual,
Jointly and Severally,

      Defendants.

_____/

**ORDER DENYING DEFENDANTS' MOTION FOR SANCTIONS [#33], GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL [#36], DENYING PLAINTIFF'S REQUEST FOR A PROTECTIVE ORDER [#36], GRANTING DEFENDANTS' MOTION TO EXTEND TIME TO FILE DISPOSITIVE MOTIONS [#32], AND AMENDING SCHEDULING ORDER.**

**I.    INTRODUCTION**

On July 31, 2012, Plaintiff, Audra Ely ("Ely"), filed the instant employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et. seq.*, ("Title VII") and Michigan's Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101 *et. seq.*, ("MELCRA"). Ely alleges Defendants, Uptown Grille, LLC, ("Uptown") and Ryan Adams ("Adams"), discriminated against her based on her gender, culminating in her July 23, 2010 termination. Presently before the Court is Defendants' Motion for Sanctions Pursuant to FED. R. CIV. P. 37(d) for Failure to Comply with the Court's Order Compelling Discovery [#33], Plaintiff's Motion to Compel and for Sanctions Pursuant

1

to FED. R. CIV. P. 30, 34, and 37 and Plaintiff's Motion to Request a Protective Order [#36], and Defendants' Motion to Extend Time for Filing Dispositive Motions [#32]. Ely filed a Response to Defendants' Motion #33 on July 9, 2013. Defendants filed a Response to Plaintiff's Motion #36, on July 23, 2013. No Reply briefs have been filed.[1] Oral arguments were heard before this Court on November 25, 2013.

For the reasons stated on the record and those that follow, (1) Defendants' Motion for Sanctions [#33] is DENIED, (2) Plaintiff's Motion to Compel is GRANTED IN PART, (3) Plaintiff's Motion for a Protective Order [#36] is DENIED, and (4) an amended scheduling order is issued in response to Defendants' Motion to Extend Time for Filing Dispositive Motions [#32].

## II. FACTUAL BACKGROUND

In 2008, Ely was hired by Uptown as a bartender. Her immediate supervisors were Adams and Brandon Richardson ("Richardson"). Soon after Ely began working at Uptown, Richardson and Ely began a sexual relationship. Ely argues that Richardson used his position of authority to coerce her into a relationship by threatening her with the loss of her job if she did not comply with his advances. Ely and Richardson dated for approximately two years.

In March 2012, Ely became pregnant. Richardson was the father. On April 29, 2010, Ely terminated the pregnancy and subsequently ended her relationship with Richardson. Richardson was not happy that Ely terminated the pregnancy nor that she ended their relationship.

---

[1] Defendants' Reply was due no later than July 16, 2013, and Plaintiff's Reply was due no later than July 30, 2013. *See* E.D. Mich. L.R. 7.1(e)(2)(13).

Prior to ending her relationship with Richardson, Ely had worked as a bartender at Uptown for over two years. During that time, Ely made $5.00 per hour plus tips (with a net pay of approximately $1,250.00 per week), she worked over forty hours a week, had a regular work schedule and set hours, and was assigned to work the busiest section of the bar on the busiest days of the week. After ending her relationship with Richardson, Ely was demoted to a waitress, her pay was reduced, her work schedule was changed and shortened, and she was moved to the slowest area of the bar where she alleges that she was regularly fondled, insulted, humiliated, and belittled by management.

Ely spoke with Defendants about the sexual discrimination, sexual harassment, and hostile work environment she was experiencing, however no action was taken. On July 23, 2010, two months after ending her relationship with Richardson, Ely was terminated.

On or about August 11, 2010, Ely filed a charge of discrimination based on sex with the United States Equal Employment Opportunity Commission ("EEOC"). In December 2010, Adams filed an action in Oakland County Circuit Court for Business Defamation and Injurious Falsehood against Ely.

### III. LEGAL ANALYSIS

#### A. Standard of Review

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). FED. R. CIV. P. 26(b)(1) permits parties to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).

Under FED. R. CIV. P. 37(d), a party's failure to provide discovery may result in

sanctions if:

> (i) a party or a party's officer, director, or managing agent–or a person designated under Rule 30(b)(6) or 31(a)(4)–fails, after being served with proper notice, to appear for that person's deposition; or
> (ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections or written response.

Additionally, under E.D. Mich. LR 7.1(a):

> (1) The movant must ascertain whether the contemplated motion, or request under Federal Rule of Civil Procedure 6(b)(1)(A), will be opposed. If the movant obtains concurrence, the parties or other persons involved may make the subject matter of the contemplated motion or request a matter of record by stipulated order.

### B. Defendants' Motion for Sanctions Pursuant to FRCP 37(d) for Failure to Comply with the Court's Order Compelling Discovery

#### 1. Defendants' Argument

Defendants assert that Ely failed to comply in good faith with numerous discovery requests. First, Defendants allege that Ely did not produce the documents requested in a manner that complied with FED. R. CIV. P. 34(2)(E)(i), which requires a party to produce documents "as they are kept in the usual course of business," or organize and label them in a manner that "correspond[s] to the categories in the request." In the instant case, Defendants maintain that as a result of how the documents were produced, they could only guess which, if any, were responsive to any particular request.

Second, Defendants allege that Ely failed to produce specific document requests #10, #11, and #14. Request #10 sought a wide variety of tax documents, however, Ely only produced a TurboTax cover sheet for 2010 and a MI-1040 for 2009. Request #11 sought documents relating to any work or job inquires Ely made during her separation from her Uptown employment in an attempt to obtain alternative positions. Defendant argues no such documents were provided. Finally, Request #14 sought production of an executed Authorization to Copy Employment Records form from each employer, other than Uptown,

4

from 2008 to the present. Again, Defendants maintain that they did not receive the requested documents.

Third, Defendants argue Ely allegedly failed to properly comply with Defendants' Interrogatory #6 and the Court's Order Granting Defendants' Motion to Compel Discovery, which specifically required the production of signed and notarized Authorizations to Disclose Patient Health Information for each of Ely's health care providers. *See* Dkt. No. 23. Ely first submitted blank forms and then submitted signed and notarized incomplete authorization forms which failed to identify the applicable health care facility.

Finally, and most importantly according to Defendants, Ely failed to provide her handwritten journal, pursuant to Defendants' Document Request #1. Instead, Ely submitted an expurgated "Plaintiff's Journal," which acknowledged that the actual handwritten document prepared and kept by Ely was being withheld and a typed, abridged verison was provided to Defendants' instead.

In accordance to LR 7.1(a)(2), on June 24, 2013, Defendants attempted to "obtain concurrence in the relief sought" by Ely, however the parties were unable to reach an agreement. Defendants allege that despite this Court's orders, Ely has responded with last minute, incomplete, and adulterated discovery. Consequently, Defendants' argue that Ely's actions have made it impossible for them to complete their discovery and prepare for the barrage of depositions Ely requested in the final few days of discovery.

### 2. Plaintiff's Response

Ely's Response to Defendants' Motion emphasizes that any delays have been Defendants fault - as they allegedly changed counsel, failed to file discovery until six months after the case began, answered Ely's discovery two months late, cancelled agreed upon depositions, stated that requested documents do not exist when witness testimony

contradicts this assertion, and are further delaying any progress by filing this meritless motion. Additionally, Ely specifically refutes each of Defendants proposed defaults with her discovery.

First, Ely argues that she fully complied under FED. R. CIV. P. 34(2)(E)(I) as her Answers to Interrogatories and Request to Produce clearly list the documents that are responsive to the immediate question in her answers to the questions. Ely concludes that any confusion on Defendants part is due to the overly broad nature of their Interrogatories and Requests for production.

Second, in response to Request #10, Ely maintains that she produced all of the tax returns in her possession and control. Similarly, to support her response to Request #11, Ely provided the Court with a copy of her answers to Defendants' First Set of Interrogatories. Ely's answer specifically states that she (1) opened "Audra's Addictions" prior to being let go from Uptown (tax income returns indicate Audra's Addictions had $-14,000.00 profit the first year and Ely was forced to close in October 2012), (2) worked for Health Company Xyngular and made approximately $10,000.00, and (3) is currently working as a promoter for Vasalus and has earned approximately $11,000.00 since November 2012. Finally, as to Request #14's Authorizations as to Employment Records, Ely argues that all authorizations Defendants provided her with were executed and attached to her answers. Ely alleges that Defendants did not provide her with any employment authorization forms, only medial authorizations, therefore she was unable to comply with Defendants' request.

Third, Ely argues that she fully executed the medical authorizations Defendants provided in compliance with the Court order, however she left the "TO" and "RE" sections blank so that Defendants could properly address the medical releases to the proper record

keeper.

Finally, Ely asserts that she not only identified her journal in several locations and produced a typed version for Defendants, but also produced a copy of the actual handwritten journal to Defendants on June 29, 2013, upon Defendants request.

Additionally, Ely alleges that Defendants blatantly violated FED. R. CIV. P. 37. When Defendants were unhappy with what Ely had produced in discovery, they did not follow the requirements laid out in FED. R. CIV. P. 37 and "confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Instead, Defendants stated that they expected to file the motion to dismiss later that day and the motion itself would "specifically indicate what is 'wrong' with Plaintiff's discovery." Although Ely requested that Defendants tell her what was wrong with the discovery, offered to correct any reasonable issues Defendants had with Ely's answers, and offered to reschedule her requested depositions, Defendants would not confer with Ely. Ely argues that Defendants' refusal suggests that their motives were improper and that when Ely requested further information, Defendants could not yet articulate what was wrong with Ely's answers, but wanted to halt discovery anyway. Defendants' actions were improper and will be further addressed in Plaintiff's Motion to Compel and for Sanctions Pursuant to FED. R. CIV. P. 30, 34, and 37.

Ely has represented to the Court that she has provided Defendants with all responsive documents and any documents containing the allegedly missing information are not in her possession, custody, or control. Additionally, Ely states that she will abide by her ongoing discovery obligations and will supplement her document production if additional responsive documents are discovered. Defendants have not filed a reply. To protect the parties interests

7

moving forward, the Court requires Ely's counsel to prepare an affidavit declaring that Ely has produced all responsive documents in her possession and identifying what she has not produced because such documentary evidence is in the control of third parties. The Court specifically requires that the affidavit include a statement specifying that Ely provided Defendants with: (1) all tax forms in her possession, (2) all documents related to her job search following her termination from Uptown, and (3) a complete copy of her journal. Additionally, the Court orders Ely to sign a release for any employment records. Both the affidavit and the signed releases for employment records are due to Defendants by Monday, December 2, 2013.

### C. Plaintiff's Motion to Compel and for Sanctions Pursuant to FRCP 30, 34, and 37

Ely argues that Defendants have failed to produce a written employment policy ("employee handbook") in response to Ely's first request for production of documents. Under FED. R. CIV. P. 26(b)(1), which governs the scope of discovery, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Ely maintains that former Uptown employee, Jessica Brubaker ("Brubaker"), and former Uptown manager, Joseph Hebbert ("Hebbert") both testified that Defendants have an employee handbook.[2] The handbook is relevant in fact and contains policies central to the issues in the instant case.

Second, Ely establishes that Defendants have unjustly refused to produce party deponents. Specifically, Defendants have failed to produce current employees Richardson, Adams, Terry Ahlgran, Katrina Sefton, and Chris Antoun for Ely's requested depositions. The

---

[2] Copies of Brubaker and Hebbert's testimonies were not provided to the Court.

8

sole explanation Defendants provide for their refusal is that they have filed a motion to dismiss,[3] and should the Court grant their motion, the numerous depositions Ely was requesting would be a waste of time and money. FED. R. CIV. P. 30 controls depositions. Under FED. R. CIV. P. 30(d)(3), "[a]t any time during a deposition the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith," however, a motion must be filed in court to terminate or limit the deposition. Defendants filed no such motion in regards to Ely's requested depositions. Under FED. R. CIV. P. 20(d)(2), "[t]he court may impose an appropriate sanction...on a person who impedes, delays, or frustrates the fair examination of the deponent."

Defendants deny that any such employee handbook ever existed, and define Brubaker and Hibber's statements as vague, speculative testimony that Uptown had some unwritten policies that might have been distributed or posted. Defendants maintain that Uptown does not have a specific handbook that they regularly provide to new employees, however they do have various policy, rule, and procedure documents that are presented to employees, or posted at the restaurant. Defendants argue that they have produced all documents contained in Ely's personnel file, which would include copies of any company guideline documents she received. Defendants point out that their answers to Ely's first set of Interrogatories and first Request for Production were served months ago on April 19, 2013, however, Ely did not raise any concerns regarding missing documents until June 28 - 29, 2013. Subsequently, Defendants argue that if a document had been provided to Ely, she should have known about

---

[3] The Motion to Dismiss Defendants refer to is Defendants' Motion for sanctions pursuant to FED. R. CIV. P. (37)(d), under which dismissal can be an appropriate sanction.

9

it and noticed its omission from discovery early on.

Additionally, Defendants assert that they refused to produce the requested parties for depositions for three acceptable reasons. First, this Court's June 11, 2013 Order warned Ely that her failure to comply with discovery would result in dismissal. *See* Dkt. No. 27. When Ely failed to comply, the Defendants moved forward with a motion for dismissal. If that motion is granted, the Defendants argue that the depositions would have been an enormous waste of time and expense. Second, the 5 requested depositions were all noticed by Ely on less than a week's notice and with only 3 business days remaining before the discovery cutoff, following 6 months of Ely doing nothing. Third, Defendants maintain that Ely failed to produce all the court-ordered discovery necessary for Defendants' counsel to properly prepare for the depositions, which had been requested by Defendants months earlier. Defendants have indicated that they will provide the witnesses for the requested depositions if this Court denies their motion for dismissal and if Ely fully complies with the Court's previous order. Additionally, Defendants argue that there was no time to move for entry of a protective order as argued by Ely.

Although Defendants underlying reasoning of saving time and money is understandable, their actions improperly denied Plaintiff's discovery request. The Court orders Defendants to produce the requested parties for depositions and extends the discovery cutoff until December 27, 2013.

### C. Plaintiff's Motion to Request a Protective Order

Ely requests a protective order restricting Richardson from attending any depositions except his own. Against Ely's objections, Richardson would not leave the room during the depositions of his former employees and current friends, which occurred on June 28 - 29,

10

2013. Richardson is at the center of the instant case and is allegedly responsible for much of the discrimination Ely suffered. Furthermore, Ely is concerned about the influence Richardson had/could have on deponents. Tanya Fischer ("Fishcher"), one of the deponents, testified that Richardson spoke to her for approximately 30 minutes prior to her deposition. Additional testimony establishes that Richardson contacted several of the witnesses after they were subpoenaed. While Defendants argue that Richardson is a representative of the company, Ely relies on the fact that Defendants have refused to identify whether or not he has any membership interest in the LLC.

In *Lumpkin v. Bi-Lo, Inc.,* 117 F.R.D. 451, 452 (M.D. Ga 1987), the plaintiff requested that the court limit the number of witnesses who were allowed to attend a deposition. The plaintiff objected to the two witnesses who accompanied defense counsel to plaintiff's deposition. *Id.* at 452. Defendant argued that FED. R. EVID. 615, the rule regarding the sequestration of witnesses, did not apply to depositions, and that the accompanying two individuals had a right to be present as corporate representatives. *Id.* FED. R. EVID. 615 states:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:
> (a) a party who is a natural person;
> (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney

The *Lumpkin* court held that FED. R. EVID. 615 applies to depositions, and that the plaintiff did not need a protective order to exclude the defendants' witnesses from attending the deposition of a plaintiff. *Id.* at 453-54. While *Lumpkin* further recognized that a parties' counsel may be accompanied by one corporate representative at the deposition, Ely argues

11

such an argument does not apply to Richardson because Uptown has done nothing to identify whether Richardson has any membership interest in the LLC. *Id.* at 454.

Additionally, in *Lowy Dev. Corp. v. Superior Court of California*, 235 Cal. Rptr. 401 (Cal. Ct. App. 1987), the court addressed the question of how many corporate officers could attend a deposition of other corporate officers. *Id.* at 404. Plaintiff arrived at his deposition with counsel and the six other deponents, refusing to go forward with the deposition unless his fellow deponents were permitted to remain in the room at all times. *Id.* at 402. Plaintiff argued that all of the deponents could remain because they were part of a small, close, family-held corporation and were therefore corporate officers with an absolute right to be present. *Id.* at 402-03. The court, however, found that "the presence at each deposition of closely allied prospective deponents could foster collusive testimony and "obviate any possibility of getting an objective deposition from each one of those persons." *Id.* at 403. The court permitted the plaintiff to have one corporate officer present at the deposition besides the deponent. *Id.* at 404.

Defendants claim that Richardson only attended the depositions as the designated representative of Uptown, and therefore falls under the corporate representative exception in *Lumpkin* and *Lowy*. Furthermore, Defendants argue that Richardson did not intimidate or influence the deponents, rather, Defendants purport that the testimony of several witnesses is that they spoke with Richardson after they were contacted by Ely's counsel in a disrespectful, intimidating, and untruthful manner. There is nothing that restricts Uptown's employees from having discussions with potential witnesses. Pursuant to FED. R. EVID. 615(b), Richardson, a management employee, was designated on the record as Uptown's representative by Defendants' attorney. Contrary to Ely's assertions, FED. R. EVID. 615 does

not require that a designated representative be anything other than an employee.

Defendants argue Ely inappropriately relies on *Lumpkin* and suggests that while the case is largely inapplicable to the instant case, the holding should be read in Defendants favor. Unlike *Lumpkin*, the Defendants in the instant case have only one individual as their representative - Richardson. Although Adams also attended the depositions, he attended as was his right to do so as a party under FED. R. EVID. 615(a). A party who is a natural person has the right to designate who it chooses to be its designated representative as long as the individual they choose is an officer or employee of that party. *United States v. Dimora*, 843, F. Supp. 2d 799, 818 (N.D. Ohio 2012). Defendants maintain that none of the witnesses were intimidated or influenced by Richardson, who said nothing during the depositions. At the beginning of Brubaker's deposition she was asked if she was intimidated by or objected to Richardson's presence and she casually responded "no."

While it is understandable, given Ely's history with Richardson that Ely would be concerned about Richardson's presence at the depositions, there is no legal argument to support granting the requested protective order. This Court holds, that under FED. R. EVID. 615, should Uptown desire, Richardson is permitted to attend the depositions as Uptown's designated representative.

### D. Defendants' Motion to Extend Time for Filing Dispositive Motions

The following amended dates will govern in this matter:

**YOU WILL RECEIVE NO FURTHER NOTICE OF THESE DATES**

| Discovery Cutoff: | December 27, 2013 |
|---|---|
| Dispositive Motion Cutoff: | January 23, 2014 |
| Motions *in Limine* due: | March 25, 2014 |
| Final Pretrial Order due: | March 25, 2014 |
| Final Pretrial Conference: | April 7, 2014 at 10:00 a.m. |
| Trial Date: | April 15, 2014 at 9:00 a.m. |

## IV.  CONCLUSION

IT IS ORDERED that (1) Defendants' Motion for Sanctions [#33] is DENIED, (2) Plaintiff's Motion to Compel and for Sanctions [#36] is GRANTED IN PART, (3) Plaintiff's Motion for a Protective Order [#36] is DENIED, and (4) an amended scheduling order is issued in response to Defendants' Motion to Extend Time for Filing Dispositive Motions [#32], which is GRANTED. Plaintiff shall submit an affidavit and signed releases consistent with this opinion no later than December 2, 2013. Defendants shall produce Ely's requested deponents.

IT IS FURTHER ORDERED that Plaintiff's attorney, Fred E. Sackllah pay $750.000 in costs for his tardiness in attending the hearing on November 25, 2013. The fine must be paid by Monday, December 2, 2013.

SO ORDERED.

Dated:  November 26, 2013

>                             /s/Gershwin A Drain
>                             GERSHWIN A. DRAIN
>                             UNITED STATES DISTRICT JUDGE

14

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 26, 2013, by electronic and/or ordinary mail.
<u>/s/ Tanya Bankston</u>
Deputy Clerk