UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUDRA ELY,

       Plaintiff,

                                          Case No. 12-13376
                                          HON. GERSHWIN A. DRAIN
v.

UPTOWN GRILLE, LLC,
a Michigan limited company, and
RYAN ADAMS, an individual,
Jointly and Severally,

       Defendants.

_____/

**<u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#41]</u>**

**I.     INTRODUCTION**

On July 31, 2012, Plaintiff, Audra Ely ("Ely"), filed the instant employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et. seq.*, ("Title VII") and Michigan's Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101 *et. seq.*, ("MELCRA"). Ely alleges Defendants, Uptown Grille, LLC, ("Uptown") and Ryan Adams ("Adams"), discriminated against her based on her gender, culminating in her July 23, 2010 termination. Presently before the Court is Defendants' Motion for Summary Judgment [#41], filed on January 23, 2014. This matter is fully briefed. Plaintiff's filed a Response on February 14, 2014, and Defendants filed a Reply on February 27, 2014. Oral arguments were heard on March 27, 2014.

For the reasons that follow, this Court will grant Defendants' Motion for Summary Judgment.

## II.     FACTUAL BACKGROUND

In 2008, Ely was hired by Uptown as a bartender. Her immediate supervisors were Adams and Brandon Richardson ("Richardson"). Soon after Ely began working at Uptown, Richardson and Ely began a consensual sexual relationship. Ely argues that Richardson used his position of authority to coerce her into a relationship by threatening her with the loss of her job if she did not comply with his advances. However, the relationship ultimately lasted over two years and survived numerous break-ups. Ely testified that she was "in love" with Richardson and that he had been the first and only true love of her life. The couple lived together from approximately the end of 2008 or the beginning of 2009 until sometime in 2010. In early 2010 Ely moved out of the condo after the couple had a fight and briefly broke up, however the relationship resumed soon after with the couple living apart. The serious boyfriend-girlfriend relationship between Ely and Richardson was open and well known to the Uptown staff and employees.

In March 2010, Ely became pregnant. Richardson was the father. On April 29, 2010, Ely terminated the pregnancy and subsequently ended her relationship with Richardson. Richardson was not happy that Ely terminated the pregnancy nor that she ended their relationship.

Prior to ending her relationship with Richardson, Ely had worked as a bartender at Uptown for over two years. During that time, Ely made $5.00 per hour plus tips (with a net pay of approximately $1,250.00 per week), she worked over forty hours a week, had a regular work schedule and set hours, and was assigned to work the busiest section of the bar on the busiest days of the week. After ending her relationship with Richardson, Ely was demoted to a waitress, her pay was reduced, her work schedule was changed and shortened, and she

2

was moved to the slowest area of the bar where she alleges that she was regularly fondled, insulted, humiliated, and belittled by management.

Outside of an isolated incident in 2009 when Ely complained to Adams about Richardson "hooking up" with another Uptown bartender while Ely and Richardson were "going through a moment," Ely never complained to Uptown management about Richardson, sexual harassment, or hostile work environment. On July 23, 2010, two months after ending her relationship with Richardson, Ely was terminated for giving a free drink to her mother.

On or about August 11, 2010, Ely filed a charge of discrimination based on sex with the United States Equal Employment Opportunity Commission ("EEOC"). In December 2010, Adams filed an action in Oakland County Circuit Court for Business Defamation and Injurious Falsehood against Ely.[1]

### III.  LEGAL ANALYSIS

#### A.  Standard of Review

Federal Rule of Civil Procedure 56(a) permits a party to:

> [M]ove for summary judgment, identifying each claim or defense-or the part of each claim or defense-on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has affirmed the use of summary judgment and recognized it as an integral part of the fair and efficient administration of justice. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party seeking summary judgment "bears the initial burden of specifying the

---

[1] The parties subsequently entered a stipulation for the dismissal of this action.

basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden then shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). The evidence presented must be such on which a jury could reasonably find for the plaintiff; mere denials, unsupported allegations, or speculations will not be enough to meet this burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B. Sex Discrimination Claim

Under Title VII,[2] it is an "unlawful employment practice for an employer...to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

#### 1. Quid Pro Quo Sexual Harassment Claim

Michigan and federal courts recognize two different types of sexual harassment: (1) quid pro quo, where a plaintiff's refusal or submission to a supervisor's sexual demands result in a tangible employment action; and (2) hostile environment, where unwelcome sexual activity is severe or pervasive, but threats of adverse action were not made, or were not carried out. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63-65 (1986). To establish

---

[2] MELCRA claims are analyzed under the same standards as Title VII claims. *See Radtke v. Everett*, 442 Mich. 368, 382-83, 501 N.W.2d 155 (1993).

a *prima facie* case of quid pro quo sexual harassment under Title VII or MELCRA, the employee must show: (1) that she was a member of a protected class, (2) that she was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors, (3) that the harassment complained of was based on sex, (4) that her submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment, and (5) the existence of respondeat superior liability. *Kauffman v. Allied Signal, Inc. Autolite Div.*, 970 F.2d 178, 183 (6th Cir. 1992).

Defendants argue that in cases involving an admitted consensual relationship, there is a presumption against quid pro quo harassment. The presumption suggests that alleged adverse employment action resulting from personal animosity towards the plaintiff due to a failed consensual relationship does not satisfy Title VII's requirement that the discriminatory act is "because of sex." *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1200-01 (11th Cir. 2001). Instead, "federal courts have consistently held that sex-based discrimination prohibited in Title VII refers to the conduct of requiring an employee to submit to sexually-based harassment as a condition of employment or discrimination based on gender, not discrimination based on sexual affiliations or relationships." *Barrett v. Kirtland Cmty. College*, 245 Mich. App. 306, 321, 628 N.W.2d 63 (2001). The court in *Keppler v. Hinsdale Tp. High School Dist. 86*, 715 F. Supp. 862, 869 (N.D. Il. 1989) analyzed the prior consensual relationship presumption based on the Seventh Circuit's ruling in *Huebschen v. Dept. of Health & Social Services*, 716 F.2d 1167 (7th Cir. 1983), where a male employee was terminated by a female supervisor after their consensual sexual relationship ended badly. The *Keppler* court interpreted *Huebschen* as it relates to a claim of Title VII

discrimination as:

> An employee who chooses to become involved in an intimate affair with her employer...removes an element of her employment relationship from the workplace, and in the realm of private affairs people do have the right to react to rejection, jealousy, and other emotions which Title VII says have no place in the employment setting. Such an employee...always has the right to terminate the relationship...[y]et, she cannot then expect that her employer will feel the same as he did about her before and during their private relationship...The consequences are the result not of sexual discrimination but of responses to an individual because of her former intimate place in her employer's life.

*Keppler*, 715 F. Supp. at 869. Such a presumption is "rebuttable only if the employee can demonstrate that the employer demanded further sexual relationships before taking the action he did." *Id.*

In the instant case, Ely does not allege that her demotion and subsequent termination were due to sex, but states they were the result of personal animosity, hurt feelings, and jealously resulting from her failed consensual relationship with Richardson. Moreover, Ely offers no evidence or testimony to find that Richardson made any unwelcome sexual advances towards her after the couple broke up in May 2010. In her testimony, Ely admits that Richardson never threatened to terminate or affect her employment, nor did he demand sex from her, or try and get back together following their breakup. (Ely Tr., p. 355-56). The only "unwelcome sexual activity" following the breakup occurred in late May 2010, when Richardson allegedly attempted to kiss Ely in the beer cooler at Uptown. However, Richardson denies the incident ever occurred and Ely never made a complaint against Richardson to Adams or any other Uptown owner.

Ely executed an affidavit on February 13, 2014, the day before submitting her Response brief. The affidavit directly contradicts her deposition testimony to present evidence of Richardson's alleged "unwanted verbal and physical conduct of a sexual

6

nature." However, case law has established that "conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact and are insufficient to withstand a motion for summary judgment." *Helton v. World Wide Fin. Servs., Inc.*, No. 01-CV-74288, 2003 U.S. Dist. LEXIS 26156, *18 (E.D. Mich. March 31, 2003). "Parties may not create factual issues by merely asserting the contrary in an affidavit after giving damaging testimony in a deposition." *Downer v. Detroit Receiving Hosp.*, 1961 Mich. App. 232, 234, 477 N.W.2d 146 (1991).

Therefore, lacking any evidence that Richardson demanded further unwanted sexual relations with Ely before her demotion or termination, Ely fails to establish that the negative employment actions she suffered were because of impermissible discrimination based on sex or contempt for Ely following her failed relationship with Richardson. *See Succar v. Dade County School Board*, 229 F.3d 1343, 1345 (11th Cir. 2000) (finding no valid Title VII claim where the "harassment of [plaintiff] was motivated not by his male gender, but rather by [defendant's] contempt for [plaintiff] following their failed relationship; [plaintiff's] gender was merely coincidental"). Therefore, Plaintiff's quid pro quo claim will be dismissed.

### 2. Hostile Work Environment Sexual Harassment Claim

To argue a *prima facie* hostile work environment in a sexual harassment claim under MELCRA or Title VII, the employee must establish that: (1) the employee belonged to a protected group, (2) the employee was subjected to communication or conduct on the basis of sex, (3) the employee was subjected to unwelcome sexual conduct or communication, (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment, and (5) respondeat superior. *Thorton v. Fed. Express Corp.*,

530 F.3d 451, 455 (6th Cir. 2008). In the instant case, there is no question that Ely's gender qualified her as a member of a protected class.

Ely relies solely on her affidavit in support of her hostile work environment claim. However, as previously mentioned, Plaintiff's affidavit lacks credibility because it has been offered in an attempt to repair her damaging deposition testimony. At her deposition, Ely testified that the only unwelcome sexual conduct she was subject to by Richardson was the attempted kiss in Uptown's beer cooler. (Ely Tr. pp. 288-89, 309). Outside of the cooler incident, Ely makes no further allegations, nor are there any indications in the record, that Richardson attempted to continue his relationship with Ely following the couple's breakup. (Ely Tr. pp. 355-56). Richardson never demanded sex from Ely, (Ely. Tr. p. 307), nor did Ely ever complain to Uptown or Adams about any sexual discrimination, sexual harassment, or a hostile work environment (Ely. Tr. p. 262). The only complaints Ely testified making to Adams were in regards to how upset she was that Richardson was romantically involved with other bartenders so soon after their relationship had ended. (Ely. Tr. pp. 323-25). Such factual allegations are not enough to establish a hostile work environment claim.

In *Green v. Adm'r of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002) (overruled on other grounds), the court found that offensive conduct following a consensual relationship could form the basis of a successful hostile work environment claim. *Green* involved the termination of a relationship between the plaintiff and her supervisor. Testimony in *Green* suggested that post breakup, the supervisor began to harass plaintiff "because she refused to continue to have a casual sexual relationship with him." *Id.* The *Green* court determined that the supervisor's continuous, unwanted pursuit was sufficient

8

evidence to support the finding of sexual harassment. There is no such evidence in the instant case.

When assessing whether or not an employee was subject to unwelcome sexual conduct or communication, the Supreme Court has stated that the appropriate standard is to examine the allegations of harassment in "light of 'the record as a whole' and 'the totality of circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred.'" *Meritor Sav. Bank, FSB, v. Vinson*, 477 U.S. 57, 69 (1986) (citing 29 C.F.R. § 1604.11(b)(1985)). The employee must show that the conduct created an environment that a reasonable person would find objectively "hostile or abusive-as well as the victim's subjective perception that the environment is abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In the instant case, Ely described the typical environment at Uptown as flirtatious and admitted she participated and profited from the frequent flirting that occurred between both customers and coworkers. Moreover, Ely, who had formerly worked as a bartender and at a strip club, testified that she was used to being "hit on" at work and stated that, for the most part, she welcomes flirting and recognizes it as part of the job. Furthermore, Ely testified that she did not feel that Richardson was hitting on her to the point that she ever found his conduct to be "offensive." (Ely. Tr. p. 268).

Finally, to establish a claim of a hostile work environment, Ely must show that her employer had actual or constructive notice of the hostile environment and failed to take prompt remedial action. *Chambers v. Trettco, Inc.*, 463 Mich. 297, n.3, 614 N.W.2d 910 (2000). Ely did not place Uptown on effective notice. The fact that an employer has promulgated a sexual harassment policy for its employees may be used as an affirmative defense by an employer to disprove notice and rebut a hostile work environment claim.

*Maddin v. GTE, Inc.*, 33 F.Supp. 2d 1027, 1032-33 (M.D. Fla. 1999). On July 13, 2008, Ely signed the Uptown Grille Sexual Harassment Acknowledgment form stating that she had read and understood the statement. The policy requires that anyone who believes he or she is the victim of sexual harassment must report the incident to Adams. The only complaints Ely made to Adams concerned her resentment that Richardson was dating other bartenders. Therefore, Uptown was never placed on sufficient notice that Ely believed Richardson was sexually harassing her in any way. Consequently, Plaintiff has failed to establish a hostile work environment claim.

### 3. Lack of Evidence of Disparate Treatment Based on Sex

No allegations are made, nor is there any direct evidence presented, to support the conclusion that Ely was demoted and later terminated because she is a woman and not a man. When there is no direct evidence, a Title VII claim is subject to the *McDonnell Douglas* burden shifting analysis. *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 390 (6th Cir. 2009). The employee must show: (1) she is a member of a protected class, (2) she was subject to adverse employment action, (3) she was qualified for the job, and (4) she was replaced by, or treated less favorably then, a person not a member of the protected class. If the employee can establish a *prima facie* case, then the burden shifts to the defendant to produce evidence of a legitimate, non discriminatory business reason for the challenged adverse employment action. *Id.* at 391. Next, the plaintiff is required to demonstrate that the defendant's proffered reason is mere pretext for unlawful discrimination by showing: (1) no basis in fact, (2) the explanation is not the actual reason for the action, and (3) the explanation is insufficient to explain the employer's action.

Defendants argue there is no factual allegation or evidence to suggest that Adams

or Uptown treated women, or Ely specifically, differently from men. Adams caught Ely giving her mom a complimentary soft drink, which the restaurant considered stealing. Ely was immediately fired. Defendants argue the actions they took were sufficient, as stealing, even in small amounts, is a very serious offense. Ely, however, claims to have suffered tangible, negative employment actions for no reason other than her refusal to resume a relationship with Richardson. Furthermore, she argues that giving out a free soft drink is a very small violation, for which termination is an excessive consequence, and that when she began working at Uptown, Richardson insinuated that it was fine for her to give free drinks. (Ely Tr. p. 340).

Finally, Ely argues that she was treated differently than a male employee, Chris Antoun ("Antoun"), who gave his dad a complimentary coffee and did not lose his job. However, testimony from Ely's former co-workers indicate that it was common knowledge that there was a restaurant policy against giving out free food and drinks to the customers, and that Uptown had terminated employees for stealing in the past. Furthermore, Antoun was an assistant manager at the time he gave his father, a regular customer who was often given free coffee by Adams, a complimentary drink. (Antoun Tr. p. 105). Given Antoun's higher position and the circumstances, Uptown's disciplinary response in demoting him from assistant manager to server seems reasonable and distinguishable from Ely's situation. Consequently Ely fails to establish that Uptown's explanation is insufficient to explain her termination.

### C. Retaliation Claim

To establish a *prima facie* case of retaliation under MELCRA, the plaintiff must show (1) that she engaged in a protected activity, (b) that was known by the defendant, (c) "the

defendant took an employment action adverse to the plaintiff," and (d) "there was a causal connection between the protected activity and the adverse employment action." *Barrett*, 245 Mich. App. at 315 (citing *Meyer v. Center Line*, 242 Mich. App. 560, 568-69, 619 N.W.2d 182 (2000)). The action being labeled as retaliation must be more than just unfair treatment. In *Barrett*, the court determined that an employee did not raise a claim of unlawful discrimination under MELCRA when he did not complain that he was being subjected to sexual conduct or that he was treated differently because of his gender. *Barrett*, 245 Mich. App. at 318. Similarly, Ely never complained to Adams or Uptown about instances of sex discrimination or experiencing sexual harassment by Richardson. Her testimony only suggests feelings of discomfort and unfairness. Therefore, the Plaintiff has failed to establish a prima facie case of retaliation.

### D. 42 U.S.C. § 1981 Claim

Ely's claim under 42 U.S.C. § 1981 should be dismissed. The statute makes it unlawful to discriminate in contracting based on race or ethnicity, neither of which is alleged in Ely's Complaint. Ely has admitted to bringing a claim against Defendants only for sex discrimination. Ely does not further address or defend this claim in her Response. Therefore, Ely's 42 U.S.C. § 1981 claim is without merit and will be dismissed.

### E. Defendant Adams Should be Dismissed

Since this Court will grant Summary Judgment in Defendants favor, Defendant Ryan will be dismissed from the action on an additional independent ground. Under Title VII, only an employer can be liable for sex discrimination, there is no independent liability. *Russell v. Bronson Heating & Cooling*, 345 F. Supp. 2d 761, 781 (E.D. Mich. 2004).

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment [#41] is GRANTED.

SO ORDERED.

Dated: March 31, 2014 /s/Gershwin A Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 31, 2014, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk